**UNDER SEAL**

FILED
Charlotte, NC

MAR 22 2023

Clerk, US District Court
Western District NC

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) <br> ) <br> ) <br> v. ) <br> ) <br> NACHIKET BANWARI ) <br> ) <br> _____ ) | DOCKET NO. 3:23-CR-62-FDW <br><br> **BILL OF INDICTMENT** <br><br> 18 U.S.C. § 1349 <br> 18 U.S.C. § 1956(h) |

THE GRAND JURY CHARGES:

At the specified times and at all relevant times:

**Background**

1. A "pop-up" was advertisement-supported software ("adware") of a malicious nature, that temporarily locked victims' computers and displayed a message directing victims to contact a toll-free number of technical assistance for removal. Pop-ups often included inflammatory and misleading representations of diagnosing systemic network infirmities, including viruses and instances of unauthorized network intrusions, all in an effort to trick victims into seeking costly technical assistance from call centers.

2. "Tech-support fraud" were multi-level operations that involve material misrepresentations of viruses or other network infirmities on victims' computers through pop-ups. When victims contacted call centers through the phone numbers presented by the pop-ups, call center employees would then defraud the consumers under the auspices of providing technical assistance to resolve any number of fictitious issues falsely identified on the victims' computers.

3. The Capstone Technologies companies (hereinafter, the "Capstone Companies") were a series of corporate entities headquartered in Charlotte, North Carolina, within the Western District of North Carolina, that operated call centers in the Republic of India ("India") which claimed to provide computer-related services to their customers. The Capstone Companies used several different corporate forms, including, but not limited to: Capstone Technologies LLC, Authenza Solutions LLC, MS-Squad Technologies, MS-Squad.com, MS Infotech, United Technologies, Real Tech Solutions, and Reventus Technologies.

1

4. Individual-1 was an owner and/or manager of the Capstone Companies. Individual-1 resided in the Western District of North Carolina and is a citizen of India.

5. Individual-2 managed the India-based call center for the Capstone Companies. Individual-2 resided in the New Delhi area of India throughout the period described in this Bill of Indictment and is a citizen of India.

6. Bishap Mittal, charged elsewhere, was the owner/manager of United Technologies and Real Tech Solutions, two of the Capstone Companies. Bishap Mittal resided in the Western District of North Carolina and is a citizen of India.

7. Nachiket **BANWARI** managed the financial accounts and business relationships for the Capstone Companies. **BANWARI** resided in Charlotte, North Carolina, within the Western District of North Carolina.

8. Corporate Victim A was an American multinational technology company with headquarters in Washington state that developed, manufactured, licensed, supported, and sold computer software, consumer electronics, personal computers, and related services.

### The Technical Support ("Tech-Support") Scheme

9. Beginning in 2014, Individual-1, Individual-2, **BANWARI**, Bishap Mittal, and others known and unknown to the Grand Jury engaged in tech-support fraud through the Capstone Companies, defrauding victims throughout the United Sates of approximately $7 million. They managed and operated the Capstone Companies, used call centers located in the New Delhi area of India to sell fraudulent services to victims, and established financial accounts for those entities to launder fraud proceeds.

10. The Capstone Companies, through Individual-1, Individual-2, and others, purchased "blocks" of malicious pop-ups from conspirators worldwide. In other words, the Capstone Companies paid the publishers of the malicious pop-ups to route calls to the Capstone Companies' call centers. When the malicious pop-ups appeared on victims' computers, the malicious pop-ups rendered the machine temporarily inoperable under the guise of detecting a supposed systemic computer failure. The pop-ups paid for by the Capstone Companies contained misrepresentations regarding the presence of computer viruses or computer or network infirmities. The pop-ups contained instructions for the computer user to call a phone number for computer repair: numbers that routed the calls to the Capstone Companies' call centers. The Capstone Companies used malicious pop-ups to trick victims into contacting a Capstone Companies representative for the performance of unnecessary tech-support services in exchange for victim funds.

11. Over the course of the scheme, Individual-1, Individual-2, Bishap Mittal, **BANWARI**, and others used multiple strategies to reach victims, including malicious pop-ups, search engine optimization, and cold calls. Regardless of the method of contact, India-based employees of the Capstone Companies would engage in telephone conversations with

the victims and misrepresented the presence of various computer infirmities on the victims' computers to trick victims into purchasing unnecessary tech-support services from the Capstone Companies. The Capstone Companies employees would often also misrepresent to victims that they were employed by, or formally associated with, Company A, when in fact they were not. Many of the victims of the scheme were over the age of 55.

12. Because of Individual-1's credit history, and to facilitate concealment of the tech-support fraud scheme and its proceeds, **BANWARI** agreed to obtain payment-processing services for the Capstone Companies to process victim payments to the Capstone Companies. To do so, **BANWARI** provided his personal information in applying for, and then managing, those services, often concealing the true nature of the tech-support fraud and ensuring fraudulent proceeds could be transferred to scheme participants in the United States and abroad. **BANWARI** also assisted the Capstone Companies in opening bank accounts to receive victim funds. At times, **BANWARI** agreed to receive victim payments by mail at his residence in the Western District of North Carolina. Once victim funds were received by the Capstone Companies, the funds were laundered domestically as well as internationally to bank accounts located in India, frequently in transaction amounts over $10,000. As payment for his participation in the tech-support fraud scheme, **BANWARI** received approximately three (3) percent of the Capstone Companies' revenue, and he established his own corporate entity—New Cato LLC—to receive payments for his services to the Capstone Companies.

13. Over the life of the tech-support fraud scheme, the Capstone Companies defrauded victims located throughout the United States, including in the Western District of North Carolina, of approximately $7 million. Victim C.D., a resident of the Western District of North Carolina, for example, had multiple contacts with the Capstone Companies after encountering malicious pop-ups that locked his computer. C.D. contacted MS-Infotech, one of the Capstone Companies, after calling a toll-free number listed on the malicious pop-up. The MS-Infotech employee remotely accessed C.D.'s computer and misrepresented that he worked for Corporate Victim A and that C.D.'s computer needed crucial repairs to fix the fictitious computer or network issues presented in the malicious pop-up. C.D. paid the Capstone Companies approximately $500 on two separate occasions as a result of the fraudulent scheme.

14. Ultimately, the Capstone Companies encountered multiple issues with customer complaints leading to a myriad of problems with, among other things, maintaining payment processing accounts. Accordingly, Individual-1, Individual-2, Bishop Mittal, **BANWARI**, and others would alter their methods, including by using multiple company aliases, misrepresenting the nature of the business to payment processors, and concealing the fact that the Capstone Companies' call centers operated from India.

## Count One
(18 U.S.C. § 1349 – Conspiracy to Commit Mail and Wire Fraud)

15. The Grand Jury re-alleges and incorporates by reference herein paragraphs 1 through 14 of this Bill of Indictment.

16. From at least in or about February 2014, the exact date being unknown to the Grand Jury, until in or about August 2018, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendant,

**NACHIKET BANWARI,**

did knowingly combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit the offenses of mail fraud, a violation of Title 18, United States Code, Section 1341, and wire fraud, a violation of Title 18, United States Code, Section 1343.

### Objects of the Conspiracy

17. *Mail Fraud.* It was a part of and an object of the conspiracy that the defendant and others known and unknown to the Grand Jury, with the intent to defraud, having devised the above-described scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and by concealment of material facts, and for the purpose of executing and attempting to execute such scheme and artifice, knowingly caused to be placed in a post office and authorized depository for mail matter, and to be sent by the United States Postal Service, mail matter in violation of Title 18, United States Code Section 1341.

18. *Wire Fraud.* It was a part of and an object of the conspiracy that the defendant and others known and unknown to the Grand Jury, with the intent to defraud, having devised the above-described scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations and promises, and by concealment of material facts, and for the purpose of executing and attempting to execute such scheme and artifice, transmitted and caused to be transmitted by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code Section 1343.

### Manner and Means

19. The defendant and his co-conspirators carried out the conspiracy through the manner and means described in Paragraphs 1 through 14 of this Bill of Indictment.

All in violation of Title 18, United States Code, Section 1349.

## Count Two
(18 U.S.C. § 1956(h) – Money Laundering Conspiracy)

20.     The Grand Jury re-alleges and incorporates by reference herein paragraphs 1 through 14 of this Bill of Indictment.

21.     From at least in or about February 2014, the exact date being unknown to the Grand Jury, until in or about August 2018, in Mecklenburg County, within the Western District of North Carolina and elsewhere, the defendant,

**NACHIKET BANWARI,**

did knowingly combine, conspire, confederate, and agree with others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

a.  to knowingly conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, which involved the proceeds of a specified unlawful activity, with the intent to conceal and disguise in whole and in part the nature, location, source, ownership, and control of the proceeds of a specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

b.  to knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, funds from a place in the United States to or through a place outside the United States, which funds involved the proceeds of a specified unlawful activity, with the intent to conceal and disguise in whole and in part the nature, location, source, ownership, and control of the proceeds of a specified unlawful activity, and that while transporting, transmitting, and transferring, and attempting to transmit, transport, and transfer, such funds knew that the funds represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i); and

c.  to knowingly engage and attempt to engage in monetary transactions affecting interstate and foreign commerce in property that was criminally derived from specified unlawful activity and was in excess of $10,000, knowing the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957.

All in violation of Title 18, United States Code, Section 1956(h).

## NOTICE OF FORFEITURE AND FINDING OF PROBABLE CAUSE

Notice is hereby given of 18 U.S.C. § 982 and 28 U.S.C. § 2461(c). Under Section 2461(c), criminal forfeiture is applicable to any offenses for which forfeiture is authorized by any other statute, including but not limited to 18 U.S.C. § 981 and all specified unlawful activities listed or referenced in 18 U.S.C. § 1956(c)(7), which are incorporated as to proceeds by § 981(a)(1)(C). The following property is subject to forfeiture in accordance with §§ 982 and/or 2461(c):

a. All property which constitutes or is derived from proceeds of the violations set forth in this Bill of Indictment;

b. All property involved in such violations or traceable to property involved in such violations; and

c. If, as set forth in 21 U.S.C. § 853(p), any property described in (a) cannot be located upon the exercise of due diligence, has been transferred or sold to, or deposited with, a third party, has been placed beyond the jurisdiction of the court, has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, all other property of the defendant/s to the extent of the value of the property described in (a).

The Grand Jury finds probably cause to believe that the following property is subject to forfeiture on one or more of the grounds stated above:

a. A forfeiture money judgment in the amount of at least $211,000.00, such amount constituting the proceeds of the violations set forth in this Bill of Indictment.

A TRUE BILL

DENA J. KING
UNITED STATES ATTORNEY

MATTHEW T. WARREN
ASSISTANT UNITED STATES ATTORNEY