# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:23-CR-00062-FDW-SCR

| UNITED STATES OF AMERICA, | ) | UNDER SEAL |
|---|---|---|
| v. | ) | |
| | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| NACHIKET BANWARI, | ) | |
| Defendant. | ) | |

**THIS MATTER** is before the Court on Defendant's "Motion to Dismiss for Pre-Indictment Delay" (the "Motion"). (Doc. No. 33).

This Motion has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1), and the Motion is now ripe for consideration.

Having fully considered the record and applicable law, the undersigned respectfully recommends that Defendant's Motion be <u>denied</u>, as discussed herein.

## I. BACKGROUND[1]

### A. Procedural Background

On March 22, 2023,[2] Defendant was charged in a two-count Bill of Indictment with: (1) Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. § 1349; and (2) Money Laundering Conspiracy in violation of 18 U.S.C. § 1956(h). (Doc. No. 5). Defendant now files his Motion to Dismiss the Bill of Indictment under Federal Rule of Criminal Procedure 12(b)(3)(ii)

---

[1] The background information stated herein is solely for the purposes of the considering Defendant's Motion to Dismiss. These facts have not been proven to a jury at trial.

[2] Both parties agree and do not dispute that the Bill of Indictment was filed within the applicable statute of limitations.

arguing that a pre-indictment delay violated Defendant's due process rights and prejudiced his defense because of the unavailability of certain witnesses, who appear to be fugitives. (Doc. No. 33).

### B. The Bill of Indictment

The Bill of Indictment alleges from at least in or about February 2014, until in or about August 2018, Defendant conspired with others to commit a tech-support fraud scheme through the Capstone Companies and defrauded victims throughout the United States of approximately $7 million. (Doc. No. 33-1 ¶¶ 9-14). The Capstone Companies "were a series of corporate entities headquartered in Charlotte, North Carolina . . . that operated call centers in the Republic of India." Id. ¶ 3. The Capstone Companies "claimed to provide computer-related services to their customers." Id. Defendant allegedly managed the financial accounts and business relationships of the Capstone Companies and obtained payment-processing services to process victim payments. Id. ¶¶ 7, 12. Defendant also allegedly assisted Capstone Companies in opening bank accounts to receive victim funds, and at times allegedly agreed to receive victim payments by mail at his residence. Id. ¶ 12. After victim funds were received by Capstone Companies, Defendant and his alleged co-conspirators allegedly laundered the funds domestically and internationally to bank accounts located in India. Id.

### C. Defendant's Alleged Co-Conspirators

The Government also investigated and are prosecuting cases against Defendant's alleged co-conspirators. Specifically, on March 12, 2019, the United States filed a Bill of Information against Bishap Mittal, which included one count of Conspiracy to Damage a Protected Computer

in violation of 18 U.S.C. § 371.[3] (Doc. No. 33-3); United States v. Mittal, Case No. 3:19-cr-78 (W.D.N.C.), Doc. No. 1. Ultimately, Bishap Mittal pled guilty to that one count, but before he was sentenced, Bishap Mittal allegedly fled the United States to India by early February 2021, and is considered a fugitive.[4] (Doc. Nos. 33-4; 33-5; 33-8; 37 at 4; 37-5); United States v. Mittal, Case No. 3:19-cr-78 (W.D.N.C.), Doc. No. 65.

Additionally, on March 17, 2021, Sumit Mittal and Deepak Mittal, Defendant's other alleged co-conspirators, were charged in an eight-count Bill of Indictment with Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. § 1349, several counts of Wire Fraud in violation of 18 U.S.C. § 1343, Conspiracy to Damage a Protected Computer in violation of 18 U.S.C. § 371, and Money Laundering Conspiracy in violation of 18 U.S.C. § 1956(h). (Doc. No. 33-2); United States v. Mittal, et al., Case No. 3:21-cr-83 (W.D.N.C.), Doc. No. 3. That Bill of Indictment alleges that Sumit Mittal owned and managed the Capstone Companies, while Deepak Mittal managed the India-based call center for Capstone Technologies. (Doc. No. 33-2 ¶¶ 2-3). The Bill of Indictment charging Sumit and Deepak Mittal was filed under seal and remains under seal at the time of this Memorandum and Recommendation. United States v. Mittal, et al., Case

---

[3] In March 2019, Bishap Mittal was charged in a one-count Bill of Information and pled guilty to the same. (Doc. No. 33-3); United States v. Mittal, Case No. 3:19-cr-78 (W.D.N.C.), Doc. Nos. 1, 4, 5, 9, & 10. Thereafter, in July 2019, Bishap Mittal was charged in a Superseding Bill of Information also with one count for Conspiracy to Damage a Protected Computer in violation of 18 U.S.C. § 371, to which he pled guilty the same month. (Doc. Nos. 33-4 & 33-5); United States v. Mittal, Case No. 3:19-cr-78 (W.D.N.C.), Doc. Nos. 18, 19, 20, 22, & 23. According to the record in Bishap Mittal's case, the "original Bill of Information cited the incorrect statutory code provision [so] the parties received permission form the Court to conduct a second Rule 11 hearing to correct the scrivener's error." (Doc No. 33-7 (internal citation omitted)); United States v. Mittal, Case No. 3:19-cr-78 (W.D.N.C.), Doc. No. 64.
[4] Bishap Mittal's case was closed for administrative purposes after Bishap Mittal was flagged as a fugitive. (Doc. No. 33-8); United States v. Mittal, Case No. 3:19-cr-78 (W.D.N.C.), Doc. Nos. 18, 19, 20, 22, 23, & 67.

No. 3:21-cr-83 (W.D.N.C.), Doc. Nos. 1-3.  As a result, this Memorandum and Recommendation and the parties' briefs and exhibits are under seal at this time.

According to Defendant, by 2021, the Federal Bureau of Investigations ("FBI") was informed that Sumit Mittal was in India.  (Doc. No. 33-29 at 4).  According to the Government, Sumit Mittal fled the United States to return to India on December 25, 2020.  (Doc. No. 37-4; Doc. No. 37 at 4).  Deepak Mittal allegedly resided in India and managed the India-based call center, and, since August 2018, was present in the United States for only a short period of time in October to November of 2020.  (Doc. No. 33-1 ¶ 5; Doc. No. 37 at 3).

## II. DISCUSSION

Defendant argues the Bill of Indictment should be dismissed because the pre-indictment delay prejudices his defense and violated his due process rights.  Specifically, Defendant believes that his alleged co-conspirators, Sumit Mittal, Deepak Mittal, and Bishap Mittal, would testify that Defendant was unaware of the fraudulent activity for which he has been indicted and Defendant submits the absence of these witnesses prejudices his defense.

The Supreme Court has addressed pre-indictment delay under the Fifth Amendment Due Process Clause.  United States v. Marion, 404 U.S. 307, 324-25 (1971) (finding that a 38-month delay between the end of the criminal scheme charged and the filing of the indictment did not violate due process); United States v. Lovasco, 431 U.S. 783, 788-797 (1977) (holding that "to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been prejudiced somewhat by the lapse of time," during which two witnesses died).  The Fourth Circuit applies a two-part test when considering whether a pre-indictment delay violates the Fifth Amendment: "(1) whether the defendant has demonstrated substantial actual prejudice and (2) whether, considering 'the government's reasons for the delay,'

there has been a violation of 'fundamental conceptions of justice or the community's sense of fair play and decency.'" United States v. Villa, 70 F.4th 704, 715-16 (4th Cir. 2023) (quoting United States v. Uribe-Rios, 558 F.3d 347, 358 (4th Cir. 2009) and citing United States v. Lopez, 860 F.3d 201, 213 (4th Cir. 2017)); United States v. Automated Med. Labs, Inc., 770 F.2d 399, 403-04 (4th Cir. 1985).

### A. Substantial Actual Prejudice

When considering whether a pre-indictment delay violates the Fifth Amendment, the defendant must first establish substantial actual prejudice. Jones v. Angelone, 94 F.3d 900, 907 (4th Cir. 1996). A showing of substantial actual prejudice is a "heavy burden" because it requires "not only that a defendant show actual prejudice, as opposed to mere speculative prejudice, but also that [the defendant] show that any actual prejudice was *substantial*—that he was meaningfully impaired in his ability to defend against the [government's] charges to such an extent that the disposition of the criminal proceeding was likely affected." Id. (emphasis in original) (internal citations omitted) (citing Marion, 404 U.S. at 325-26 and Lovasco, 431 U.S. at 789-90). "[T]he prejudice must be concrete and substantial." United States v. Lynch, 56 F.3d 62, 62 (4th Cir. 1995) (unpublished). "Speculative or conclusory assertions of prejudice do not suffice." Id. In addition, "a mere showing of delay in indictment and arrest is not sufficient" and "prejudice will not be presumed from mere delay." Jones, 94 F.3d at 907. Indeed,

> as long as the indictment is brought within the statute of limitations, we will not presume that the defendant has been prejudiced by delay between commission of the offense and arrest or indictment. It is incumbent upon the defendant, if he is to prevail upon such a claim, to establish that he has been so prejudiced.

Id. (quoting Marion, 404 U.S. at 322).

When the defendant claims he is prejudiced due to the unavailability of witnesses, the defendant must: "[(1)] identify the witness he would have called; [(2)] demonstrate, with

specificity, the expected content of that witness' testimony; [(3)] establish to the court's satisfaction that he has made serious attempts to locate the witness; and, [(4)] finally, show that the information the witness would have provided was not available from other sources." Jones, 94 F.3d at 908. In so doing, the defendant "'must relate the substance of the testimony which would be offered by the missing witnesses . . . in sufficient detail to permit a court to assess accurately whether the information is material to the accused's defense.'" United States v. Kalbflesh, 621 Fed. App'x 157, 159 (4th Cir. 2015) (quoting United States v. Bartlett, 794 F.2d 1285, 1290 (8th Cir.1986)).

As an initial matter, the Court notes that all three Mittal witnesses were no longer in the United States by early 2021. (Doc. Nos. 33-8; 37 at 4; 37-5; 33-29 at 4; 37-4; 33-1 ¶¶ 3-5); United States v. Mittal, Case No. 3:19-cr-78 (W.D.N.C.), Doc. No. 65. Even if Defendant had been indicted in late 2019 or 2020, the Mittal witnesses still may have been unavailable to testify at trial. Sumit Mittal allegedly fled the United States to return to India on December 25, 2020. Deepak Mittal was only in the United States for a brief period of time in October to November of 2020. Bishap Mittal allegedly fled the United States by early February 2021. See United States v. Kato, 666 F. Supp. 1428, 1430 (D. Haw. 1987) ("This court takes notice of the fact that the uncontroverted evidence adduced at trial establishes the fact that Eddie Chu fled Hawaii and became a fugitive in December of 1981 or January of 1982" and even if the case had gone to trial in early 1982, "the defendant would have been faced with the 'unavailability' problem insofar as Eddie Chu is concerned.").

As to the unavailability of Deepak and Bishap Mittal, Defendant fails to demonstrate the content of their expected testimony with any specificity. Instead, Defendant alleges that he

believes that Deepak Mittal and Bishap Mittal[5] would testify that Defendant was unaware of the fraudulent activity for which he has been indicted and explain Defendant's role in the Capstone Companies. (Doc. No. 33-29 at 1, 11). Defendant's beliefs or hopes that these witnesses would have testified favorably to him is at best conclusory and speculative as to any prejudice. United States v. Palmer, No. 3:21-CR-00234-FDW-DSC, 2022 WL 17174460, at *3 (W.D.N.C. Oct. 5, 2022), memorandum and recommendation adopted, 2022 WL 17851682 (concluding claims of prejudice were speculative where defendant argued unavailable witness would have provided testimony to support defense that he did not make false statements); Lynch, 65 F.3d at 62 ("For that matter, he has not made a credible claim that her diary would have exonerated him. Speculative or conclusory assertions of prejudice do not suffice.").

Defendant also argues that Sumit Mittal's testimony is needed to explain "much of the communications provided by the Government in discovery." (Doc. No. 33-29 at 11). Defendant points to six email exchanges for which he argues Sumit Mittal's "explanations and testimony would prove critical to Defendant's defense" that he did not have knowledge of the alleged fraudulent activity. (Doc. No. 33-29 at 4). However, Defendant's belief that Sumit Mittal would testify that he did not have knowledge of the alleged fraudulent activity is still speculative. Defendant has not demonstrated to the Court with any specificity the actual content of Sumit Mittal's testimony. The undersigned has closely reviewed the six email exchanges identified by Defendant but neither the email exchanges nor any other information presented by Defendant establishes with any concreteness, rather than mere speculation, as to what Sumit Mittal would testify to and whether he would actually provide any favorable or exculpatory testimony at all.

---

[5] As to Bishap Mittal, Defendant provides more information by pointing to Bishap Mittal's prior statements in which Bishap Mittal relayed Defendant's role in the alleged scheme, but does not point with specificity to any exculpatory information. (Doc. Nos. 33-29 at 1, 8, 11).

United States v. Drake, No. 1:16-CR-205-2, 2018 WL 1756632, at *3 (M.D.N.C. Apr. 10, 2018) (concluding defendant's contention about unavailable witnesses' testimony was highly speculative where defendant contended witness would have testified about defendant's mental state at time in question including actual knowledge); United States v. Holland, 985 F. Supp. 587, 589 (D. Md. 1997) (finding insufficient prejudice to warrant dismissal of the indictment and rejecting defendant's "self-serving indication" of what another witness would say and finding that the same unavailable witness "who was not originally charged, would confess to a killing, risking subsequent prosecution.").

The undersigned also finds it dubious that the alleged co-conspirators, who have become fugitives, will somehow provide favorable explanations, much less exculpatory ones, for Defendant.[6] To the contrary, the Mittal witnesses have similarly been criminally charged as co-conspirators in connection with the alleged scheme, and the Mittal witnesses have taken affirmative steps to avoid facing criminal charges and the criminal justice system in the United States. Automated Med. Labs., Inc., 770 F.2d at 404; Drake, 2018 WL 1756632, at *3.

The undersigned finds the Fourth Circuit's opinion in Automated Med. Labs, Inc. particularly instructive on this point. 770 F.2d 399 (4th Cir. 1985). In that case, the defendant argued he was substantially prejudiced by a 45-month delay from the time the investigating agency completed its initial investigative report and the time of indictment because a co-defendant fled to Argentina about six months before the indictment was returned. Id. at 401-02. Among other things, the defendant argued that the co-defendant would have testified that no officer or director had any knowledge of unlawful practices, and that the co-defendant intentionally concealed such

---

[6] In fact, based on exhibits attached to Defendant's Motion to Dismiss, it seems just as possible that the Mittal witnesses' testimony might have been inculpatory rather than exculpatory. (See Doc. Nos. 33-22 at 3 & 33-27 at 3); see also Automated Med. Labs, Inc., 770 F.2d at 404.

practices. Id. The Fourth Circuit rejected this argument and found that defendant "was prejudiced only slightly, if at all by the loss of [the co-conspirator's] testimony." Id. at 404. The Fourth Circuit found that the content of the testimony was "speculative" and there was "no showing that [the co-conspirator] would have waived his Fifth Amendment rights and . . . testified at the trial." Id. at 404. Defendant's argument is nearly identical here and requires a similar result. If the Court were to accept Defendant's argument, this would disregard the clear direction by the Fourth Circuit that it is incumbent on a defendant to establish substantial actual prejudice due to a pre-indictment delay and that such prejudice may not be speculative. Jones, 94 F.3d at 907 ("[W]e will not presume that the defendant has been prejudiced by delay between commission of the offense and arrest or indictment. It is incumbent upon the defendant, if he is to prevail upon such a claim, to establish that he has been so prejudiced.").

Even if the content of the testimony was not speculative, Defendant has not established that the witnesses would testify at all given their Fifth Amendment rights against self-incrimination.[7] Defendant argues that since the Mittal witnesses are fugitives "it is not clear whether they would assert their Fifth Amendment rights if called" or whether "it is possible that

---

[7] Defendant's argument that he could still call the Mittal witnesses to the stand to invoke their Fifth Amendment rights does not convince the Court otherwise. The Defendant's ability to call the Mittal witnesses to the stand for this purpose is itself highly speculative. United States v. Branch, 537 F.3d 328, 342 (4th Cir. 2008) (concluding district court did not abuse its discretion in not allowing defendant to call witness to stand to invoke Fifth Amendment right against self-incrimination where "[t]he district court found that placing Johnson on the stand solely to invoke his Fifth Amendment privilege would lead to 'unfair prejudice' in the form of both unwarranted speculation by the jury and the government's inability to cross-examine Johnson. And any inferences that the jury might have drawn from Johnson's privilege assertion would have been only minimally probative—and likely improper—in any event."); United States v. Appiah, 690 F. App'x 807, 810 (4th Cir. 2017) (unpublished) (concluding district court did not abuse its discretion in refusing to permit defendant to call a witness to the stand solely to invoke her Fifth Amendment privilege). In any event, any prejudice from not being able to call the Mittal witnesses to the stand solely to invoke the Fifth Amendment, is minimal, if at all, and also highly speculative.

some or all of [the Mittal witnesses] would have reached plea agreements that included testifying in Defendant's case." (Doc. No. 33-29 at 11-12). Defendant's argument itself demonstrates the speculative nature of whether the Mittal witnesses would assert their Fifth Amendment rights and is, consequently, speculative as to any prejudice. [8]

In sum, any slight prejudice that Defendant established, if at all, is speculative and Defendant has not demonstrated that he is substantially actually prejudiced by the Mittal witnesses' unavailability to be called as witnesses. For these reasons, the undersigned recommends that the Motion to Dismiss be <u>denied</u>.

### B. Justice, Fair Play, and Decency

If the defendant fails to meet the "heavy burden" of establishing substantial actual prejudice, then "the inquiry ends there." <u>Automated Med. Labs., Inc.</u>, 770 F.2d 403-04. However, even assuming *arguendo* that the Court found that Defendant met his burden in showing substantial actual prejudice, in considering the second prong of the two-part test, the undersigned does not find that the delay violates fundamental conceptions of justice or the community's sense of fair play and decency. For this reason as well, the undersigned recommends that the Motion to Dismiss be <u>denied</u>.

"If the threshold requirement of actual prejudice is met, the court must then consider the Government's reasons for the delay, balancing the prejudice to the defendant with the Government's justification for delay." <u>Automated Med. Labs, Inc.</u>, 770 F.2d at 403-04 (citations omitted). "The basic inquiry then becomes whether the Government's action in prosecuting after substantial delay violates 'fundamental conceptions of justice' or 'the community's sense of fair

---

[8] The Court is not making any determination about the Fifth Amendment rights available for each Mittal witness.

play and decency.'" Id. (quoting Lovasco, 431 U.S. at 790). "If delay results from a protracted investigation that was nevertheless conducted in good faith, prosecuting the defendant following such investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time." Kalbflesh, 621 Fed. App'x at 159 (internal quotation marks omitted) (quoting Uribe-Rios, 558 F.3d at 358).

Defendant asserts that certain records indicate the Government was prepared to indict Defendant as early as September 2019, November 2019, and various times in 2020, but he was not indicted until March 2023, without justification. (Doc. Nos. 33-29 at 3; 33-9; 33-10; 33-11; & 33-12). The Government argues the delay in indicting Defendant resulted from: (1) investigation of a complex scheme that continued into 2023; (2) pre-indictment negotiations with Defendant's counsel in an effort to resolve the charges; and (3) the impact of the COVID-19 pandemic.

In the instant case, after the investigation became overt in 2018, the undersigned finds that the Government's continued investigation and review of documents is not a due process violation. Lovasco, 431 U.S. at 795 ("We therefore hold that to prosecute a defendant following investigative delay does not deprive him of due process, even if his defense might have been somewhat prejudiced by the lapse of time."). The Government asserts investigators collected and reviewed well over one terabyte of evidence, which would take significant time to review. (Doc. No. 37 at 16); see also Automated Med. Labs., Inc., 770 F.2d at 404-05 ("The wheels of government bureaucracy may, at times, seem to turn at a frighteningly slow pace, but careful investigation and consideration prior to the bringing of criminal charges is generally a wise policy."). After early 2021, the Government continued its investigation, including executing search warrants in 2022, and subpoenaing records in 2023. (Doc. No. 37 at 3, 16).

The undersigned recognizes that the pre-indictment discussions between Defendant's counsel and the Government appears to have ended sometime in 2019 or early 2020. However, the Court finds it an important factor, when considered in addition to others, for the delay in indicting Defendant. At least as to that time period, Defendant cannot have it both ways in that defense counsel was engaging in discussions with the Government pre-indictment while now arguing that the delay was without justification. United States v. Dizelos, 217 F.3d 841, 841 (4th Cir. 2000) (unpublished) (affirming district court denial of motion to dismiss for pre-indictment delay due to "the complexity of the case, the extensive nature of the investigation, the number of counsel involved, and the ongoing negotiations regarding pleas and whether an indictment would be necessary.").

It also is not lost on the Court that a portion of the delay occurred during the COVID-19 pandemic. While the Court in this District worked diligently and made every effort to remain open and keep all cases moving forward as usual, other departments and investigating agencies still faced impacts on staffing and resources. United States v. Briscoe, No. RDB-20-0139, 2020 WL 5076053, at *3 (D. Md. Aug. 26, 2020) ("Finally, and most importantly, the delay in this matter is attributable to the COVID-19 pandemic, not to any deliberate tactical maneuvering.").

In short, "Defendant has been charged within the statute of limitations, which is the primary safeguard against prejudicial pre-indictment delay." Palmer, 2022 WL 17851682, at *3 (citing Betterman v. Montana, 578 U.S. 437, 447-48 (2013)). The Court has not been presented with evidence to suggest the Government deliberately delayed investigation for tactical gain. Id. (citing Jones, 94 F.3d at 905). To the contrary, the Mittal witnesses fled by early 2021, and the Government also has a compelling interest in locating the Mittal witnesses since it has criminal charges currently pending against each of the Mittal witnesses. Therefore, notions of justice, fair

play and decency are not violated by this case and the undersigned recommends <u>denying</u> Defendant's Motion to Dismiss. [9]

## III. RECOMMENDATION

**FOR THE FOREGOING REASONS**, the undersign concludes that Defendant failed to demonstrate substantial actual prejudice because of the pre-indictment delay and also that notions of justice, fair play and decency are not violated by this case. Accordingly, the undersigned respectfully recommends that Defendant's Motion to Dismiss (Doc. No. 33) be **DENIED**.

## IV. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Criminal Procedure 59, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Fed. R. Crim. P. 59(b); <u>Diamond v. Colonial Life & Acc. Ins. Co.</u>, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. <u>Id.</u>; <u>United States v.</u>

---

[9] The cases to which Defendant points in support of his Motion are distinguishable from this case and do not persuade the Court to reach a different conclusion on either prong of its analysis. For example, in <u>United States v. Parrott</u>, 248 F. Supp. 196, 205-06 (D.D.C. 1965), the court found the delay in indicting the defendant improper where the government gave priority to a civil action over a criminal action, which allowed the government to avail itself to extensive discovery available in civil litigation, and did not have an adequate explanation for its delay. <u>Id.</u>; <u>see</u> also <u>United States v. Alderman</u>, 423 F. Supp. 847, 856-57 (D. Md. 1976) (concluding indictment delay was "an intentional action on the part of the prosecution, unexplained other than by tactical motives related to this investigation or to the higher priority given by the prosecutors to other investigations."); <u>United States v. Kleinbard</u>, 333 F. Supp. 699, 701-02 (E.D. Pa. 1971) (dismissing indictment where defendant claimed entrapment defense, the witness whom he alleged entrapped him became unavailable, and defendant claimed he could not recall events of drug transaction); <u>Marks v. Alaska</u>, 496 P.2d 66, 68-69 (Alaska 1972) (reversing conviction with direction to trial court to dismiss indictment where the state Attorney General filed a confession of error and "conceded that [defendant-appellant] at trial made a '*prima facie* showing of prejudice.'").

Midgette, 478 F.3d 616, 621-22 (4th Cir. 2007). "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting Midgette, 478 F.3d at 622).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and to the Honorable Frank D. Whitney.

**SO RECOMMENDED**.

Signed: January 30, 2024

_____
Susan C. Rodriguez
United States Magistrate Judge