**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**

**CRIMINAL DOCKET NUMBER 3:23-CR-00062**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>NACHIKET BANWARI,<br><br>Defendant. | **DEFENDANT'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM** |

NOW COMES Defendant, Nachiket Banwari, by and through and his undersigned attorney, and respectfully files his Response to the Government's Sentencing Memorandum (Doc. 103). For the reasons stated below and in Defendant's Sentencing Memorandum, Mr. Banwari respectfully contends that the appropriate loss amount enhancement is sixteen points pursuant to U.S.S.G. § 2B1.1(b)(1)(I) because Mr. Banwari did not knowingly join the conspiracy until the middle of 2016.

## I. <u>The Government fails to confront the loss amount concessions it previously made in detailed filings before this Court.</u>

The Government's sentencing memorandum fails to at all address the concessions it made regarding loss amount in court filings years ago. On February 4, 2020, the Government presented its analysis on the conspiratorial loss amount in a sentencing memorandum before this Court. Exhibit 1. Specifically, the Government argued that the conspiratorial loss amount for Bishap Mittal, the brother and employee

of the conspiracy's ringleader, was between $1,500,000 and $3,500,000 even though the total revenue obtained by the Capstone companies was $7,582,949. The Government reached this conclusion regarding loss amount based on the FBI's complete analysis of the revenue generated from the pop-up scheme and noted that pop-ups were being used since at least mid-2016. The Government's present contention regarding the loss amount attributable to Mr. Banwari is not only inconsistent with its previous representations but also inconsistent with its concession that Mr. Banwari was a minor participant in the conspiracy. Accordingly, this Court should reject the Government's argument that the loss amount attributable to Mr. Banwari exceeds $3,500,000.

## II. Conspiratorial losses prior to July 2016 were not known or reasonably foreseeable to Mr. Banwari.

The Government incorrectly attributes the total revenue obtained by Capstone as loss attributable to Mr. Banwari. The total revenue generated by Capstone during Mr. Banwari's involvement and loss amount for sentencing guidelines purposes are not inherently identical. Mr. Banwari did not join the conspiracy at its inception in 2014, and he had no reason to know the fraudulent nature of the Capstone businesses until mid-2016. Therefore, Mr. Banwari's profit calculations are irrelevant for loss amount purposes because Mr. Banwari initially did not know that Capstone was committing fraud. Mr. Banwari certainly had direct knowledge of Capstone's revenue given his role in the business's finances. However, he initially believed that Capstone came by this revenue honestly. The Government fails to distinguish between Capstone's revenue that Mr. Banwari knew about and financial loss that was within the scope of a criminal

conspiracy that Mr. Banwari knowingly agreed to undertake and was reasonably foreseeable to him.

To this end, the Government's reliance on *United States v. Duncan* is misplaced. The defendant in that unpublished case was held accountable for loss amount purposes for all of the losses generated by co-conspirators that were unknown to her because the "structure, nature, and duration of the conspiracy" made such loss foreseeable to her. *United States v. Duncan*, 578 Fed. Appx. 183, 189 (4th Cir. 2014) (unpublished). Additionally, the court noted that the *Duncan* defendant was aware that her co-defendants were actively involved in the conspiracy from around the time she joined the conspiracy. *Id*. at 185. Moreover, the defendant was part of the scheme from the very beginning of the active period and remained involved until the end; the defendant was fully aware of the scope of the operation, and the defendant was one of the main organizers. *Id*. at 189.

Unlike the *Duncan* defendant, Mr. Banwari did not knowingly enter the conspiracy at the time he agreed to assist the Mittal brothers in obtaining merchant accounts. Mr. Banwari, a minor participant, was not fully aware of the scope of the operation, nor was he a leader or main organizer of the scheme. Prior to July 2016, Mr. Banwari was unaware of the fraudulent nature of Capstone's business model and thus had not knowingly entered a conspiracy and should not be held responsible for losses prior to that time.

## III. Mr. Banwari's misplaced faith in Sumit Mittal does not prove knowing entrance into the conspiracy.

Mr. Banwari's payment processing applications and the representations he made therein were based entirely on Sumit Mittal's insistence that the processing accounts would not otherwise be approved. Sumit Mittal repeatedly ensured Mr. Banwari and outside payment processing vendors that Capstone was not committing fraud and that Capstone's agents were not falsely representing themselves as Microsoft employees. Exhibit 2, Exhibit 3. Sumit Mittal needed Mr. Banwari precisely because Sumit had been repeatedly rejected by multiple payment processing platforms. Sumit insisted to Mr. Banwari that tech support and Sumit himself would not and could not get approved for credit card processing.

Moreover, Mr. Banwari's communications with the Mittals reflect juvenile posturing rather than any evidence that Mr. Banwari knowingly joined the conspiracy from the beginning. Mr. Banwari's text messages referencing "scams" that the Government relies on are totally devoid of any sophisticated planning, business agreements, or strategic conversations. As noted above, these text messages were sent in the context of Mr. Banwari's sincere belief that payment processors were biased against tech support companies generally and are tongue-in-cheek comments regarding the difficulty in obtaining payment processing accounts. The Government cannot meet its burden to prove that Mr. Banwari knowingly entered the conspiracy in 2014 based on these messages.

## IV. The 18 U.S.C. § 3553(a) factors favor a downward variance.

Mr. Banwari's history and characteristics indicate that his participation in Capstone was an anomaly born from his association with Sumit Mittal. Mr. Banwari's years-long career with Wells Fargo as well as his entrepreneurship through his gym business demonstrate Mr. Banwari's ability and willingness to earn a living honestly. Unlike his co-conspirators, Mr. Banwari maintained legitimate employment throughout Capstone's scheme. The Government notes that Mr. Banwari was more educated and had lived in the United States for longer than his co-conspirators. This is precisely why Mr. Banwari was targeted by Sumit Mittal; Sumit needed someone with U.S. citizenship and good credit to apply for the payment processing accounts that Sumit tried and failed repeatedly to obtain himself.

Finally, as the Government notes, the § 3553(a) factors underscore the need to avoid unwarranted sentencing disparities. Mr. Banwari is inherently subject to an enormous sentencing disparity as the only Capstone conspirator who will receive any sentence at all for Capstone's conduct. For these reasons and the reasons articulated in Defendant's Sentencing Memorandum, Mr. Banwari respectfully submits that a sentence of probation is sufficient, but not greater than necessary, to achieve the goals of sentencing.

## V. The appropriate forfeiture is $110,105.87.

For the reasons articulated above and in Defendant's Sentencing Memorandum (Doc. 102), Mr. Banwari respectfully submits that the forfeiture order should reflect only those proceeds which Mr. Banwari received after he knowingly entered the conspiracy

in July 2016. The financial gains which Mr. Banwari collected from the conspiracy are $110,105.87.

## VI. Conclusion

Mr. Banwari respectfully requests that this Court impose a probationary sentence and enter a forfeiture order of no more than $110,105.87.

This the 10th day of February, 2026.

Respectfully Submitted,
/s/ Meaghan H. Woodward
Meaghan H. Woodward
Attorney for Defendant
N.C. Bar. No.: 61175
Arnold & Smith, PLLC
200 North McDowell Street
Charlotte, North Carolina 28204
Telephone: 704.370.2828
Facsimile: 704.370.2202
Email: Meaghan.Woodward@arnoldsmithlaw.com

## CERTIFICATION

Pursuant to this Court's Standing Order entered June 18, 2024, regarding Use of Artificial Intelligence, the undersigned certifies that:

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction as to accuracy of the proposition for which it is offered, and the citation to authority provided.

Respectfully submitted, this the 10th day of February, 2026.

/s/ Meaghan H. Woodward
Meaghan H. Woodward
*Attorney for Defendant*
N.C. Bar. No. 61175
Arnold & Smith, PLLC
200 North McDowell Street
Charlotte, North Carolina 28204
Telephone: 704.370.2828
Facsimile: 704.370.2202
Email: Meaghan.Woodward@arnoldsmithlaw.com